**Thod S. MADSEN, individually; as Personal Representative of the Estate of Miyong Madsen, his deceased wife; and as Guardian for Gina K. Madsen, the minor child of Thod S. and Miyong Madsen, Plaintiff,**

v.

**ALLSTATE INSURANCE COMPANY, an Illinois corporation, Defendant.**

**Civ. No. 90–834–FR.**

United States District Court, D. Oregon.

April 12, 1991.

Roy B. Thompson, Portland, Or., for plaintiff.

Craig D. Bachman, Richard H. Berman, Lane Powell Spears & Lubersky, Portland, Or., for defendant.

## OPINION

FRYE, District Judge:

The matter before the court is defendant's motion for summary judgment (# 21) dismissing the amended complaint.

Plaintiff, Thod S. Madsen, brings this action for breach of a contract of insurance against the defendant, Allstate Insurance Company (Allstate), and, in the alternative, for reformation of the contract of insurance. Madsen also alleges claims for breach of contract to provide insurance, and for negligence, fraud, breach of express warranty, breach of warranty-fitness for a particular purpose, unfair trade practices, estoppel, and bad faith.

## UNDISPUTED FACTS

Madsen is a businessman experienced in retail operations and the distribution of electronic classical organs. In October, 1987, Madsen owned an automobile liability insurance policy and a homeowner's insurance policy, both issued by Allstate.

On October 16, 1987, Madsen telephoned his Allstate insurance agent, Howard McGraw, and inquired about the cost of an umbrella policy for his automobile and homeowner's insurance policies. McGraw quoted Madsen a price, and Madsen agreed by telephone to purchase the Allstate umbrella policy.

Neither Madsen nor McGraw have a clear memory of the telephone conversa-

tion. McGraw states in his affidavit that he indicated to Madsen "that the umbrella insurance extends the liability coverage of his automobile and homeowner's insurance." Affidavit of McGraw, p. 2. Madsen recalls that McGraw said nothing to him about the nature of the coverage supplied under an umbrella policy and merely quoted a price. Madsen and McGraw agree, however, that there was no specific discussion of any exclusions in the telephone conversation.

Madsen intended that the umbrella policy provide coverage in excess of his underlying insurance policy without exclusion. McGraw knew that Allstate's umbrella policy is an excess liability insurance policy and would not extend the coverage of Madsen's underlying uninsured motorist coverage in his automobile policy. Allstate does not sell excess uninsured motorist insurance.

Soon after the telephone conversation, Allstate sent Madsen a binder which he received for a Personal Umbrella Policy in the amount of $1,000,000.00. The binder is entitled "PERSONAL UMBRELLA POLICY APPLICATION" and was accompanied by a separate notice which stated that "[i]f you do not receive your policy within 15 days from the date of this application DIRECTLY NOTIFY THE COMPANY AT ITS HOME OFFICE." In the comments section of the binder, Madsen's underlying automobile and homeowner's policies are referenced by policy number. There are no notations of any exclusions in the binder.

On or about November 11, 1987, Madsen received a document entitled "PERSONAL UMBRELLA POLICY DECLARATION" which describes coverage as "BASIC LIABILITY" and states a yearly premium of $140.00. Madsen received this document, tore the payment coupon from it, and returned the coupon together with payment to Allstate. The declaration references Allstate's Personal Umbrella Policy, Document Number U9910–1. There is a dispute as to whether Madsen received a copy of the Personal Umbrella Policy.

The Personal Umbrella Policy that Madsen purchased states that "Allstate will pay when the insured becomes legally obligated to pay for personal injury or property damage caused by an occurrence." The policy contains no provision for extending the uninsured motorist coverage to the limits of the umbrella policy.

On December 17, 1988, there was an automobile accident in Lane County, Oregon which resulted in the death of Madsen's wife and injury to his daughter and to other passengers in the car. The driver of the car who was at fault carried minimum insurance, insufficient to compensate fully the victims of the accident. Allstate paid the $300,000 limits of Madsen's uninsured motorist coverage pursuant to the underlying automobile insurance policy. Madsen called McGraw and requested a copy of the umbrella policy.

Thereafter, Madsen's counsel demanded that Allstate pay the limits of the umbrella policy. Allstate refused on the grounds that the umbrella policy covered only liability claims made against Madsen and did not extend his uninsured motorist coverage.

Madsen filed this action seeking to recover the limits of the umbrella policy on theories of breach of contract and/or fraud or, in the alternative, to reform the insurance contract to reflect his understanding of the insurance coverage he purchased from Allstate.

## CONTENTIONS OF THE PARTIES

Allstate contends that it is entitled to judgment in its favor as a matter of law because the policy it issued to Madsen bound Allstate to provide coverage only when Madsen became legally obligated to pay for personal injury or for property damage. Allstate points out that the policy by its express terms does not extend the limits of Madsen's uninsured motorist coverage. Allstate contends that there is strong evidence that Madsen knew at the time he purchased his umbrella policy that it was a liability policy, and that even if Madsen mistakenly believed that the policy provided excess uninsured motorist coverage, there is no legal basis for extending Madsen's coverage beyond that specifically requested by him.

Allstate contends that in insurance terminology, an "umbrella" policy is an excess personal liability policy and does not contain excess uninsured motorist coverage. Allstate relies upon the fact that McGraw made no representation concerning excess uninsured motorist coverage and that Allstate does not sell excess uninsured motorist insurance. Allstate concedes that there is a dispute of fact between the parties as to whether Madsen received a copy of the policy that he purchased in October of 1987, but contends that this dispute is not material in that there is sufficient evidence that Madsen knew or should have known that the policy he purchased was a liability insurance policy.

Madsen contends that an umbrella policy is not by definition only a liability insurance policy. Madsen contends that the policy Allstate claims to have sold to him is not the umbrella policy that Allstate agreed to sell to him or the umbrella policy that he ordered. Madsen explains that an umbrella policy is intended to provide protection beyond primary coverage, and that Allstate's policy limited to liability only provides partial umbrella coverage.

Because there is a dispute over whether he received a copy of the policy, Madsen contends that for the purposes of this motion for summary judgment, the court must determine the limits of coverage from the four corners of the binder which Allstate issued to Madsen. Madsen asserts that the binder refers to his automobile and to his homeowner's policies and contains no exclusion of uninsured motorist coverage from the excess coverage.

## APPLICABLE STANDARD

Summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The burden to establish the absence of a material issue of fact for trial is on the moving party. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th

Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). This burden "may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden shifts to the nonmoving party to "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553.

Assuming there has been adequate time for discovery, summary judgment should then be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. All inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). When different ultimate inferences can be reached, summary judgment is not appropriate. *Sankovich v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir.1981). Finally, summary judgment is inappropriate where credibility is at issue. Credibility issues are appropriately resolved only after an evidentiary hearing or full trial. *SEC v. Koracorp Indus.*, 575 F.2d 692, 699 (9th Cir.), *cert. denied*, 439 U.S. 953, 99 S.Ct. 348, 58 L.Ed.2d 343 (1978).

## ANALYSIS

*Breach of Contract*

■ Madsen's claim for breach of contract is that Allstate failed to provide coverage in an amount equal to the limits of the umbrella policy that Madsen purchased. Madsen recognizes that the umbrella policy issued does not extend the coverage provided by his uninsured motorist policy. Nonetheless, he contends that the umbrella policy that was issued to him was not the umbrella policy that he purchased.

The binder sent to Madsen contained no contract terms other than that the insured

wishes to purchase a "PERSONAL UMBRELLA POLICY." The umbrella policy referred to in the binder and purchased by Madsen was a liability insurance policy and had nothing to do with the limits of the uninsured motorist coverage provided by Madsen's automobile insurance policy. Madsen received the billing declaration from Allstate, which expressly described the policy he purchased as a "basic liability" insurance policy. Madsen purchased the basic liability insurance policy that Allstate offered to him. There is no factual or legal basis to support Madsen's claim that Allstate's binder established a contract for $1,000,000.00 in excess uninsured motorist coverage.

Allstate is entitled to summary judgment on Madsen's breach of contract claim.

*Reformation*

■■■■■ Madsen contends in his second claim for relief that the contract of insurance should be reformed to reflect his intent that the coverage in the umbrella policy includes excess uninsured motorist protection. In order to justify the granting of reformation, there must be a mutual mistake of the parties to the transaction. *Wilson v. Westinghouse Elec.*, 85 Wash.2d 78, 84, 530 P.2d 298 (1975); *Williams v. Fulton*, 30 Wash.App. 173, 176, 632 P.2d 920 (1981). There is no evidence to support this claim because there is no evidence that the mistake, if there was a mistake, was a mutual mistake.

Allstate is entitled to summary judgment on Madsen's second claim for reformation.

*Breach of Contract to Provide Insurance*

Madsen alleges that Allstate breached its contract with Madsen to provide him with uninsured motorist coverage in the amount of $1,000,000.00. There is no evidence that Allstate agreed to provide Madsen with uninsured motorist coverage in the amount of $1,000,000.00.

Allstate is entitled to summary judgment on Madsen's third claim for breach of contract to provide insurance.

*Negligence*

Madsen contends that McGraw was negligent in not advising him that the umbrella policy he purchased did not include uninsured motorist coverage.

■■■■ An insured has a duty to instruct the insurance agent of his insurance needs. If the instructions bear different interpretations, the agent is justified in acting in good faith upon a reasonable construction of the insured's instructions. *American States Ins. Co. v. Breesnee*, 49 Wash.App. 642, 745 P.2d 518 (1987).

■■■■ Madsen telephoned McGraw and requested a price quotation for Allstate's Personal Umbrella Policy. McGraw gave Madsen the quotation and sold Madsen the umbrella policy that Allstate has for sale. There was no discussion of uninsured motorist coverage. McGraw had no duty to inquire of Madsen as to whether Madsen wanted what he asked to purchase from Allstate. Madsen could have asked Allstate whether the policy he purchased included excess uninsured motorist coverage. He did not do so. There is no factual or legal basis for this court to conclude that there is a question of fact as to whether McGraw acted negligently in this transaction.

Allstate is entitled to summary judgment on Madsen's fourth claim for negligence.

*Fraud*

■■■■ In his fifth, sixth and seventh claims for relief, Madsen alleges that Allstate defrauded him by providing him with an umbrella liability insurance policy which did not include uninsured motorist protection. There is no evidence in this case that Allstate or McGraw attempted to or did in any way mislead Madsen or make any misrepresentations to Madsen. The only evidence is that Allstate and McGraw provided Madsen with what he requested, Allstate's umbrella policy for his automobile and homeowner's insurance policies.

Allstate is entitled to summary judgment on Madsen's fifth, sixth and seventh claims for relief for fraud.

*Breach of Warranty*

In his eighth and ninth claims for relief, Madsen alleges that Allstate expressly warranted that it would provide $1,000,-

000.00 in excess uninsured motorist coverage and breached that warranty. There are no facts to support the claim that Allstate made such a warranty to Madsen. There are no facts in this record to support Madsen's claim that Allstate agreed to provide excess uninsured motorist coverage to Madsen.

Allstate is entitled to summary judgment on Madsen's eighth and ninth claims for relief for breach of warranty.

*Unfair Trade Practices*

Madsen contends that the representations of Allstate were deceptive in light of the fact that Madsen wanted excess uninsured motorist coverage. There is no evidence that Allstate knew that Madsen wanted excess uninsured motorist coverage.

Allstate is entitled to summary judgment on Madsen's tenth claim for relief for unfair trade practices.

*Estoppel*

Madsen contends that Allstate represented that the policy it issued to him would include excess uninsured motorist coverage and that Allstate should be estopped from relying upon the policy that it issued. There is no factual basis to support this claim.

Allstate is entitled to summary judgment on Madsen's eleventh claim for relief for estoppel.

*Bad Faith*

Madsen contends that Allstate acted in bad faith in not paying the $1,000,000.00 limit of his umbrella policy. There are no facts to support this claim.

Allstate is entitled to summary judgment on Madsen's twelfth claim for relief for bad faith.

## CONCLUSION

Allstate's *motion for summary judgment* (# 21) is granted. The court will file a judgment in favor of Allstate as of this date.