[No. 26229-7-I. Division One. August 26, 1991.]

HELEN L. SNYDER, ET AL, *Respondents,* v. ALI AUDREY LYNN PETERSON, ET AL, *Appellants.*

*James D. Sherman* and *Preston Thorgrimson Shidler Gates & Ellis; Daniel P. Thompson* and *Thompson & Delay,* for appellants.

*John E. Ederer* and *Helsell, Fetterman, Martin, Todd & Hokanson,* for respondents.

WEBSTER, A.C.J. — Ali and Eugene Peterson, wife and husband (hereinafter Peterson), appeal an order of the trial court granting summary judgment in favor of Helen Snyder, Dona Best and George Malvern Keller (Jr.) (hereinafter Snyder). The trial court found that a deed, which inadvertently omitted the legal description of the property, complied with the statute of frauds since it could be reformed due to a scrivener's error under the doctrine of mutual mistake. Finding no error, we affirm.

## FACTS

In 1981 George M. Keller, Sr. (hereinafter grantor) executed and delivered a deed which conveyed his 40-acre Redmond farm in equal shares to his four children — Ali Peterson, Snyder, Best and Keller, Jr. The deed was granted in consideration of "ten dollars ($10.00) and love and affection".[1] Each of the four siblings paid an equal one-quarter share of the gift tax and the attorney and accountant fees. Through 1989 each of the four siblings paid one-quarter of the annual property taxes.

The legal description in the deed inadvertently omitted the section, township, range numbers, and meridian. The omission was a result of a clerical error committed by the attorney who drafted the deed. The property in question was the only property owned by the grantor.

In 1988 the grantor attempted to reconvey the property to Peterson, thereby excluding Snyder. Apparently this was done since Snyder had initiated proceedings to have

[1] The transfer was done prior to the grantor's death to avoid estate taxes.

the grantor involuntarily declared incompetent and have a guardian appointed for his estate.[2] The guardianship proceeding resulted in a permanent injunction issued in December of 1987, barring any of the children from conversing with the grantor about finances or the distribution of his estate. In 1988, after Peterson violated the injunction, an order was entered directing her to cease and desist from further violations.

In January of 1989 it was discovered that Peterson had recorded the 1988 deed naming Peterson as the sole grantee to the property in question. Peterson never said anything about the deed to Snyder and continued to allow Snyder to pay taxes on the property.

In 1989 Snyder filed a complaint to quiet title, claiming that under the doctrine of incorporation the 1981 deed contained an adequate description of the property, or in the alternative, that the court should allow reformation of the deed under the doctrine of mutual mistake. Peterson brought a motion for summary judgment, and Snyder cross-motioned for the same. The trial judge granted Snyder's motion holding that the 1981 deed was, as a matter of law, subject to reformation due to a scrivener's error.[3]

## DISCUSSION

■ The general rule in Washington is that a deed containing an inadequate legal description of the property to be conveyed is not subject to reformation. *Martinson v.*

---

[2]This action was taken due to Peterson's manipulation of the grantor to induce him to make Peterson a joint tenant on several certificates of deposit which the grantor owned. The grantor was also experiencing failing mental capabilities, and Peterson had been convincing him to make changes in his finances that benefited her to the detriment of her siblings.

[3]Upon filing the deed, an excise tax number was stamped on both the deed and an excise tax affidavit. The excise tax affidavit contained a tax account number(s) corresponding to the section, township, range, and meridian of the property. A federal gift tax return, which contained a correct legal description of the property, was filed 8 months later. The trial court held that the deed also satisfied the statute of frauds in that the excise tax stamp referred to and incorporated the excise tax affidavit, from which the description of the property could be ascertained by reference to the tax account numbers.

*Cruikshank,* 3 Wn.2d 565, 568-69, 101 P.2d 604 (1940); *Howell v. Inland Empire Paper Co.,* 28 Wn. App. 494, 495-96, 624 P.2d 739, *review denied,* 95 Wn.2d 1021 (1981). However, our courts have held that the rule in *Martinson* and *Howell* "should not be construed so as to preclude reformation under an appropriate factual setting." *Williams v. Fulton,* 30 Wn. App. 173, 176 n.1, 632 P.2d 920, *review denied,* 96 Wn.2d 1017 (1981). An "appropriate factual setting" occurs when the deficiency is due either to a scrivener's error (*Maxwell v. Maxwell,* 12 Wn.2d 589, 123 P.2d 335 (1942)) or a mutual mistake (*Tenco, Inc. v. Manning,* 59 Wn.2d 479, 368 P.2d 372 (1962)).[4] We find that the trial court properly held that the deed was subject to reformation due to either a scrivener's error or a mutual mistake.

### Scrivener's Error

■ Reformation of a deficient description in a deed is appropriate where the deficiency is due to a scrivener's error. *Maxwell v. Maxwell, supra; Thompson v. Stack,* 21 Wn.2d 193, 150 P.2d 387 (1944). Here, the attorney who drafted the deed inadvertently left the section, township, range, and meridian off the deed. This constituted a scrivener's error.

■ Peterson, however, claims that the "scrivener's error" exception is not applicable. She cites *Maxwell* where the court stated:

[I]f the description of the land is so vague and indefinite that effect could not be given the instrument without writing new, material language into it, then parol evidence is not admissible. There must be language in the deed sufficient *to serve as a pointer or a guide to the ascertainment of the location of the land.*

---

[4]Our courts have held that "[w]here there has been an agreement actually entered into which the parties have attempted to put in writing, but have failed because of a mistake either of themselves or of the scrivener, the courts having jurisdiction in matter of equitable cognizance have power to reform the instrument in such a manner as to make it express the true agreement". (Italics omitted.) *Geoghegan v. Dever,* 30 Wn.2d 877, 889, 194 P.2d 397 (1948) (quoting *Silbon v. Pacific Brewing & Malting Co.,* 72 Wash. 13, 129 P. 581 (1913)).

(Italics ours.) *Maxwell*, at 596 (quoting *Detroit, G.H.&M. R.R. v. Howland*, 246 Mich. 318, 224 N.W. 366, 68 A.L.R. 1 (1929)). This quote, however, is taken out of context. The court was addressing the issue of an ambiguity in a deed, and the conflicting parol evidence offered to supplement it. These circumstances do not exist here. All of the parties admittedly intended that the specific parcel in question pass to the four siblings equally. There was no ambiguity requiring application of the parol evidence rule. Nor was there any evidence of fraud or overreaching, and the circumstances clearly show the grantor's intent. As stated in *Platts v. Arney*, 46 Wn.2d 122, 278 P.2d 657 (1955), "[i]t is apparent from the instrument itself that the mistake is one of the scrivener, adopted by both parties when they signed the real-estate contract." *Platts*, at 128. When considering the circumstances at the time of execution and the intent of the parties, it is apparent that the trial judge's ruling allowing reformation was proper.[5]

## Mutual Mistake

■ Reformation is also appropriate when a deficient description in a deed is caused by a mutual mistake. *Tenco, Inc. v. Manning*, *supra* at 485. In *Tenco*, the court held "[i]f the intention of the parties is identical at the time of the transaction, and the written agreement does not express that intention, then a mutual mistake has occurred." *Tenco*, at 483; *Maxwell*, at 593 ("where both parties have an identical intention . . . and a writing executed by them is materially at variance with such intention, a court of equity will reform the writing so that it shall express their intention"); *see also Platts*, at 127-28 ("where the requirements of the statute of frauds pertaining to real-estate contracts are otherwise satisfied, the legal description of the property involved may be reformed on the ground of mutual mistake, provided the fact of a mutual mistake is established"); *Williams v. Fulton*, *supra* at 176. The court in *Tenco* also stated:

---

[5]The court in *Maxwell* stated that the "surrounding circumstances and the situation of the parties at the time the deed was executed" in conjunction with the deed are factors to be taken into account. *Maxwell*, at 599.

This rule for determining whether a legal description properly conforms to the requirements of the statute of frauds, however, is inapplicable when an erroneous description appears in a document because of a mutual mistake. *"Until the memorandum document is made to say what the parties intended it to say, invocation of the Statute of Frauds is premature."* The document may be reformed to reflect fairly the intention of the parties before the test to determine the legality of the description is applied, once it is established that the defect was the product of a mutual mistake.

. . . .

We hold that a property description which is defective according to the standards long recognized by this court may be corrected by reformation when the defect resulted from a mutual mistake. The earnest-money agreement in the instant case, reformed to reflect the intentions of the parties, is not violative of the statute of frauds . . ..

(Citations omitted. Italics ours.) *Tenco*, at 485-86.

Peterson argues that under *Williams*, reformation is not appropriate. In *Williams*, the court stated:

Reformation is not appropriate . . . if the agreement expresses the intent of the parties, but the legal description is merely incomplete.

*Williams*, at 176-77. Again, this quote is taken out of context. The court in *Williams* also stated that "a mutual mistake occurs only if the intentions of the parties were identical at the time of the transaction, and the written agreement did not express those intentions." *Williams*, at 176. In that case the court found that the agreement did express the parties' intent and, therefore, there was no mutual mistake.

In this case, *Williams* is distinguishable. Here, both the grantor and the four siblings intended that the specific property in question be transferred, but the agreement did not express that intent since it failed to describe the property intended to be transferred. In light of the parties' intent, the fact that the agreement did not express that intent, and the case law allowing reformation upon proof of a mutual mistake, we decline to reverse the trial court's decision allowing reformation.

## Unilateral Gift Exception

Finally, Peterson claims that the deed in question is not subject to reformation under either the scrivener's error or mutual mistake exception since it was a gift. As such, according to Peterson, the transfer of the deed was a *unilateral* act involving no consideration and, therefore, by definition, could not have involved a mutual mistake. *Fleury v. Bowden,* 11 Wn. App. 617, 620, 524 P.2d 449 (1974).[6] We disagree.

■ The intent at the time of the transaction was to transfer ownership in the property in order to avoid estate taxes upon the grantor's death. Each of the four children paid $2,910 as one-quarter of the gift tax due, and paid the attorney and accountant fees in connection with the transfer. The deed itself stated that the transfer was "in consideration of [t]he sum of ten dollars ($10.00) and love and affection".[7] Even though the parties at the time referred to the transaction as a gift, these facts establish sufficient consideration to take the deed out of the "unilateral gift exception" to reformation.

The judgment is affirmed.

GROSSE, C.J., and FORREST, J., concur.

---

[6]Peterson further claims that reformation of the deed is contrary to the grantor's wishes since the 1988 deed transferred the property to only one of the siblings. However, the intent at issue is the grantor's intent *at the time the 1981 deed was executed*. There is no doubt that in 1981 the grantor intended to convey the property to all four siblings equally.

[7]There is also authority to support the proposition that any nominal consideration accompanied by "love and affection" is sufficient to justify reformation of a deed. *See Lawrence v. Clark,* 115 S.C. 67, 104 S.E. 330 (1920) (a deed given in consideration of $5 and love and affection was held to be valuable consideration and subject to reformation); *Groce v. Benson,* 168 S.C. 145, 167 S.E. 151 (1933) (deed in consideration of $1 and love and affection held supported by valuable consideration and, therefore, subject to reformation). *See also Stover v. Hill,* 208 Ala. 575, 94 So. 826 (1922); *White v. Reading,* 293 Mo. 347, 363, 239 S.W. 90, 94 (1922) ("[w]hile a court of equity will not undertake to enforce a mere gratuity, yet where there is a meritorious consideration a court of equity will take cognizance of the mistake and correct it").