[No. 39491-6-I.   Division One.   September 14, 1998.]

JERALD E. SATERLIE, ET. AL., *Appellants*, v. ALAN G. LINEBERRY, ET AL., *Respondents*.

*Randy M. Boyer,* for appellants.

*Alan G. Lineberry,* pro se.

*Dennis W. Jordan* of *Dennis Jordan & Associates,* for respondents.

GROSSE, J. — Jerald Saterlie and Barbara Hudak appeal a trial court order reforming their deed as well as the deeds of three other lots sold by a common grantor under a short plat. The deeds and the short plat contain a legal description of an easement across Saterlie and Hudak's property inconsistent with that contained in the short plat map filed with the application for the plat. The map was used to obtain county approval of the short plat and its description was in conformity with a county ordinance requiring a 60-foot easement. Because the parties did not seek a variance from the county ordinance, and Saterlie and Hudak were aware of the discrepancy prior to closing but did not inquire into the discrepancy until after closing, the evidence establishes that the discrepancy was based on a scrivener's error contrary to the intent of the parties. Reformation of the deeds under these circumstances is the appropriate remedy. Accordingly, we affirm.

## FACTS

Saterlie and Hudak were the first to purchase one of four lots sold by a common grantor to each of the parties. The legal description contained in each of the deeds given the parties contains, among other things, a 30-foot easement on the south side of Saterlie's property, and references a short plat reflecting the same easement. The map attached to the recorded short plat, however, shows a 60-foot easement.

While Snohomish County ordinances have since changed to require only a 30-foot easement, ordinances in effect at the time of approval of the subdivision required a 60-foot easement for ingress, egress, and utilities. Snohomish

County (County) approved this subdivision based solely on the short plat map containing a 60-foot easement.

Prior to closing, Saterlie and Hudak were aware of the discrepancy between the map and the legal description, and they witnessed the installation of various utilities outside the 30-foot easement area. They researched the discrepancy at the county auditor's office, but they did not confront the developer as to the width of the easement until after closing.

Saterlie and Hudak brought an action in Snohomish County Superior Court to quiet title. The trial court entered judgment reforming the legal descriptions in the deeds to create a 60-foot easement in conformity with the plat map and County ordinances in effect at the time of the conveyance. Saterlie and Hudak appeal.

## DISCUSSION

Saterlie and Hudak contend that they hold paramount title because they purchased their property before respondents. Paramount title, however, does not "denote a title which is simply better or stronger than another," but refers to title that is superior to another "in the sense that the former is the source or origin of the latter."[1] The essential question in this case is whether the legal description of the easement in the plat and in the deeds can be reformed to match those contained in a plat map submitted with the plat and approved by the County.

■ Where a deed references a map of the land conveyed, the map and the deed are to be construed together, and the map becomes, "in legal effect, a part of the description."[2] As a result, the map's description of the easement has the

---

[1] BLACK'S LAW DICTIONARY 1267 (4th rev. ed. 1968).

[2] *Moore v. Clarke*, 157 Wash. 573, 581, 289 P. 520 (1930); *accord Cragin v. Powell*, 128 U.S. 691, 9 S. Ct. 203, 32 L. Ed. 566 (1888). It should be noted that some jurisdictions hold that while discovery of the parties' intent is the overriding objective, as a general rule, "where there is a conflict between the description in a deed and that shown by an attached map, the map controls the description." *Ganus v. Cuoco*, 351 So. 2d 224, 226 (La. Ct. App. 1977); *see also Withington v.*

same legal effect as the description contained in the short plat.

■ Reformation of a deed is available where, as here, an inadequate legal description results from a scrivener's error.[3] The party seeking reformation must establish by clear and convincing evidence facts that warrant allowance of the remedy.[4] It is not necessary, however, for the party seeking reformation to "show that the parties had agreed upon any particular words or language to be used in the instrument, but only to show that they agreed to accomplish a particular object by the instrument and that the instrument, as executed, is insufficient to execute their intention."[5] The evidence in this case supports a conclusion that the parties intended to complete this transaction in accordance with the map and County ordinances, which required a 60-foot easement.

Wayne Hovde, the grantor of the lots, testified that deed contained a 30-foot easement in its legal descriptions as a result of "a scrivener's and typographical error out at the engineer's office." He stated that when Saterlie confronted him with the error, a couple of weeks to a month after the transaction closed, he told Saterlie that the easement was supposed to be as illustrated in the map, "as per County regulations, which is 60 feet." He further testified that he never attempted to get a variance from the County's 60-foot requirement.

Saterlie testified that he had seen the map prior to closing the transaction. He stated that prior to closing he went to the auditor's office to compare the map to the legal de-

_Derrick_, 153 Vt. 598, 572 A.2d 912, 914-15 (1990) (holding that where an ambiguity or error exists with regard to a description in a deed, an attached map or survey relating to the ambiguity or error will control).

[3]_Halbert v. Forney_, 88 Wn. App. 669, 673, 945 P.2d 1137 (1997). _See also Snyder v. Peterson_, 62 Wn. App. 522, 526, 814 P.2d 1204 (1991) (holding that reformation of a deficient description in a deed is appropriate where the attorney who drafted the deed inadvertently left the section, township, range, and meridian off the deed).

[4]_Maxwell v. Maxwell_, 12 Wn.2d 589, 593, 123 P.2d 335 (1942).

[5]_See Duenke v. Brummett_, 801 S.W.2d 759, 765 (Mo. Ct. App. 1991).

scription in the short plat. Hudak testified that she witnessed the placement of utilities on the property outside what she believed to be a 30-foot easement. Both parties still closed even though the discrepancy in the deed had not been corrected.

Donna Jordan, a planner with Snohomish County at the time the short plat in question was approved, testified as a witness for both sides. She stated that County approval of the subdivision was based solely on the short plat map. She stated that the legal description of the property is not considered until immediately prior to recording, and then subject only to cursory review when, as here, it is certified by a surveyor or engineer. She further stated that if the map contained a 30-foot easement, the subdivision would not have been approved.

Given the map, the fact that the County required a 60-foot easement at the time of the conveyance, and that the grantor had not sought a variance from that ordinance, the evidence clearly and convincingly supports the conclusion that the parties intended to complete the transaction in accordance with the ordinance. In fact, the transaction could not have been completed outside the requirements of the ordinance. The trial court, therefore, properly reformed the deeds to match the description in the plat map.

■ Saterlie and Hudak's contention that the map may not be used to create a 60-foot easement because the map does not comply with the statute of frauds is misplaced. Even assuming that the map did not comply, the deeds contain an easement, and the deeds "should not be tested for compliance with the statute of frauds until the document is reformed to reflect the parties' intent."[6] After reformation, the deeds reflect a 60-foot easement, and the deeds clearly fall within the statute of frauds.

We affirm.

[6]*Halbert*, 88 Wn. App. at 673.

W<small>EBSTER</small> and E<small>LLINGTON</small>, JJ., concur.